**Michael BROOKS, Plaintiff,**

v.

**Albert PRACK, Director of Special Housing, Steven J. Piecuch, Corrections Counselor, and James Esgrow, Commissioner's Hearing Officer, Defendants.**

No. 13–CV–6338 EAW.

United States District Court, W.D. New York.

Signed Dec. 31, 2014.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### *INTRODUCTION*

*Pro se* Plaintiff Michael Brooks ("Plaintiff"), a prisoner housed at Southport Correctional Facility, filed this action seeking relief under 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment in connection with the 2010 rehearing of a 2008 misbehavior report. (Dkt. 1). Presently before the Court is Defendants' motion to dismiss and motion for summary judgment. (Dkt. 8). For the following reasons, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion for summary judgment is denied without prejudice.

### *FACTUAL BACKGROUND*

The statement of facts that follows is based on the allegations contained in Plaintiff's complaint.

On July 28, 2008, Plaintiff was issued a misbehavior report charging him with assault on staff, refusing a direct order, and insolent language. (Dkt. 1 at ¶ 8). The misbehavior report was allegedly the result of an incident in which Plaintiff assaulted Officer Harden following his refusal to move into a new cell. (*Id.* at ¶ 9). Plaintiff allegedly "charged" Officer Harden with a cart and struck him, after which a struggle ensued. (*Id.*).

A "tier 3 superintendent's hearing" [1] (the "first disciplinary hearing") was held on August 8, 2008, relating to the incident involving Officer Harden. (*Id.* at ¶ 10). On August 12, 2008, Plaintiff was found

Michael Brooks, Alden, NY, pro se.

Bernard F. Sheehan, NYS Attorney General's Office, Rochester, NY, for Defendants.

---

**1.** "DOCCs conducts three types of inmate disciplinary hearings.... Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of 'good time' credits." *Dawes v. Racette,* No. 9:12–CV–0718 (NAM/DEP), 2014 WL 6674636, at *2 n. 1, 2014 U.S. Dist. LEXIS 161412, at *4–5 n. 1 (N.D.N.Y. Oct. 22, 2014).

guilty and issued a penalty of 20 months in solitary confinement ("SHU"), loss of privileges for 20 months, and "twenty (20) months loss of good time." (*Id.* at ¶ 11). Plaintiff and his attorney, Michael Cassidy, Esq., filed timely administrative appeals of the first disciplinary hearing. (*Id.* at ¶ 12). Plaintiff's attorney thereafter filed a proceeding under Article 78 of the New York Civil Practice Law and Rules on May 27, 2008. (*Id.* at ¶ 14). On January 29, 2009, the Commissioner's designee decided Plaintiff's administrative appeal: Plaintiff's 20–month SHU and 20–month loss of privileges penalties were affirmed, but his "loss of good time" penalty was reduced from 20 months to 12 months. (*Id.* at ¶ 13). On January 8, 2010, the Honorable Robert Mueller, J.S.C., who presumably heard Plaintiff's Article 78 petition, ordered that Plaintiff be granted a new hearing. (*Id.* at ¶ 15).[2]

Plaintiff was re-served with the misbehavior report relating to the 2008 incident with Officer Harden on March 5, 2010. (*Id.* at ¶ 20). Plaintiff was assigned an inmate assistant, defendant Steven Piecuch ("Piecuch"), to assist him in his hearing. (*Id.* at ¶ 21). On March 5, 2010, Plaintiff met with defendant Piecuch and requested various materials in preparation for his hearing, including: (1) interviews of inmates and porters in his cellblock during 2008; (2) log book entries; (3) the watch commander log book; (4) unusual incident ("UI") reports and use of force ("UF") reports; (5) nurse interview reports; (6) officer interview reports; (7) rehearing procedures; (8) to-and-from memos; (9) photographs of inmates and officers; (10) a videotape of the 2008 incident; and (11) a list of questions to ask potential witnesses. (*Id.*). Piecuch gave Plaintiff "an incomplete UI and UF and a handwritten log

book entry," and informed Plaintiff that he would not be able to locate the witnesses requested by Plaintiff as the incident occurred over two years prior. (*Id.* at ¶¶ 22–23). Piecuch allegedly took Plaintiff's request for materials and never returned. (*Id.* at ¶ 24). Plaintiff alleges that Piecuch failed to assist him in the following ways:

(1) Plaintiff was never given the answers to the questions he proposed for potential witnesses, which deprived Plaintiff of the opportunity to marshal the evidence in time for his hearing;

(2) Piecuch never provided Plaintiff with witness refusal forms, or otherwise indicated how their interview would represent a safety threat or would have been redundant;

(3) The inmate assistant form did not indicate if anyone was interviewed, or if any witnesses agreed or refused to testify at Plaintiff's hearing;

(4) Piecuch did not finish filling out the inmate assistant form; and,

(5) The inmate assistant form indicated that a majority of the documents requested by Plaintiff were never produced, including the list of inmates in E7 block, list of porters, photographs, interviews of nurses and witnesses, and command logs.

(*Id.* at ¶¶ 26–30).

Plaintiff's rehearing commenced on March 10, 2010, at which time Plaintiff informed the hearing officer, defendant James Esgrow ("Esgrow"), of the lack of assistance he received from inmate assistant Piecuch. (*Id.* at ¶ 31). Plaintiff also objected that his hearing was not timely. (*Id.* at ¶ 32). Plaintiff requested a new inmate assistant several times during his hearing.

---

**2.** Plaintiff does not specify in his complaint the grounds on which he was granted a new

hearing; however, Esgrow denied these requests and refused to assign Plaintiff a new assistant. (*Id.* at ¶¶ 37–38, 44–45). Plaintiff also alleges that it was discovered during the hearing that Piecuch "secretly was providing [Esgrow] with documents and information." (*Id.* at ¶ 53). Plaintiff alleges the following violations occurred during the hearing:

(1) It was never determined which witnesses were interviewed and which refused to testify for Plaintiff;

(2) Esgrow failed to introduce inmate refusal forms into the record;

(3) Esgrow failed to demonstrate that producing the inmate refusal forms would have constituted a threat to institutional safety or would have been redundant;

(4) Esgrow failed to make a part of the record the efforts made to secure the testimony of inmate witnesses that could not be located;

(5) Esgrow refused to help Plaintiff, because it was "not his job";

(6) Esgrow refused to allow testimony to show that Plaintiff's rights were violated before the hearing began, and that his rights were violated during the hearing;

(7) Esgrow refused to allow Plaintiff's witnesses to be asked whether they had been interviewed;

(8) Esgrow used the testimony of the author of the misbehavior report to deny Plaintiff video documentary evidence and exonerating verbal testimony;

(9) When Plaintiff objected to Esgrow as being biased, Esgrow refused to hear further evidence, and refused to allow Plaintiff to object;

(10) Esgrow failed to inquire as to what happened to the videotape, such as "was it recycled or was it destroyed intentionally, or who did it.";

(11) When Plaintiff requested photographs of Officer Harden, Esgrow produced photographs of an unidentified officer;

(12) Plaintiff requested the pictures, but Esgrow denied the request, stating that Plaintiff could only look at the pictures during the hearing;

(13) Plaintiff was denied a pen and paper; and,

(14) When Esgrow called the author of the misbehavior report as a witness, he did not ask the officer if it was him depicted in the pictures.

(*Id.* at ¶¶ 54–61, 63, 66, 68–72, 74).

Plaintiff further alleges that "[Esgrow's] witnesses" testified that there were inmate witnesses present during the 2008 incident, but that they did not see anything, and that there was no videotape of the incident. (*Id.* at ¶ 64). Accordingly, Plaintiff asserts that there were inmate witnesses who could have testified on his behalf. (*Id.* at ¶ 65).

Plaintiff also alleges that he proved that there was a videotape of the incident via the UI report. (*Id.*).

The hearing concluded with a guilty disposition, and a penalty of 20 months solitary confinement and loss of privileges, including "phones, recreation, commissary and packages," and 20 months recommended loss of good time. (*Id.* at ¶ 75).

Plaintiff alleges that after he left the hearing, Esgrow recommenced the hearing and stated on the record that he gave Plaintiff certain materials, which Plaintiff claims that he never received. (*Id.* at ¶ 76). Plaintiff alleges that this secret testimony outside of his presence denied him his right to object to the accuracy of the testimony, and that it was illegal to remove him from the hearing. (*Id.* at ¶ 77).

Plaintiff also alleges that there were several extensions granted which delayed

his hearing, and that defendant Esgrow failed to include these time extensions in the record so that Plaintiff could object to "the dubious circumstances they [were] requested under." (*Id.* at ¶¶ 33–35). Plaintiff "F.O.I.L. requested" the hearing extensions after his hearing. (*Id.* at ¶ 39). Plaintiff alleges that the reasons for the extensions included: the location of multiple witnesses from another facility; the video of the incident was not yet received from Clinton; the location of employee witnesses; to consider the evidence and render a decision; and documents from another facility had not yet been received. (*Id.* at ¶¶ 39–43, 50–52). Plaintiff also alleges that "[i]t was later determined that [the hearing officer] went on vacation during [the] hearing." (*Id.* at ¶ 49).

Plaintiff filed an administrative appeal of the hearing, which was affirmed in its entirety. (*Id.* at ¶ 78).

### *PROCEDURAL HISTORY*

Plaintiff filed his complaint on July 2, 2013, against defendants Esgrow, Piecuch, and Albert Prack ("Prack"),[3] in their official and individual capacities, alleging violation of 42 U.S.C. § 1983 pursuant to the Due Process Clause of the Fourteenth Amendment. (Dkt. 1). Specifically, Plaintiff alleges that his hearing was untimely; he received inadequate assistance from his inmate assistant, who refused to produce the documents requested by Plaintiff and interview witnesses; he did not have a fair hearing, because defendant Esgrow refused to permit him to call certain witnesses, present certain evidence, was not fair and impartial, and improperly excluded him from a portion of the hearing; Prack failed to remedy the wrongs at the hearing; and Prack and Esgrow were neg-

ligent in supervising their subordinates. (*Id.* at ¶ 79).

On August 7, 2013, the Honorable William M. Skretny, Chief Judge, United States District Court, dismissed Plaintiff's claims against Defendants in their official capacities pursuant to the Eleventh Amendment. (Dkt. 3). On October 25, 2013, Defendants filed a motion to dismiss and a motion for summary judgment. (Dkt. 8). Plaintiff responded on November 27, 2013, arguing that Defendants' motion should be denied to allow him to engage in discovery to substantiate his claims. (Dkt. 11 at 2–3). Defendants filed their reply on December 12, 2013. (Dkt. 12). On February 21, 2014, the case was transferred to the undersigned for all further proceedings. (Dkt. 13).

### *DISCUSSION*

#### I. Defendants' Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do

---

**3.** In their motion to dismiss and motion for summary judgment, Defendants refer to the Director of Special Housing as "Albert Prack." (Dkt. 8–3 at 2). It appears that

Plaintiff incorrectly sued defendant Prack as "Albert Preck." The Court *sua sponte* amends the caption to reflect defendant Prack's correct name.

more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

As an initial matter, the Court notes that "Defendants' application is odd in several respects." *Parra v. Wright*, No. 11–CV–6270 CJS, 2013 WL 6669235, at *4, 2013 U.S. Dist. LEXIS 177784, at *14–15 (W.D.N.Y. Dec. 18, 2013). Defendants' notice of motion clearly indicates that they are moving for an order pursuant to Fed. R.Civ.P. 56, but it makes only a passing reference that they are also moving for an order pursuant to Rule 12. (Dkt. 8). Defendants' motion includes a Rule 56 statement of facts and affidavits from defendants Esgrow and Piecuch. (Dkt. 8–2, 8–4, and 8–5). Defendants' motion also includes the required L.R. Civ. P. 56(b) notice to *pro se* litigants (Dkt. 8–1), but the supporting memorandum of law includes the Rule 12(b)(6) "motion to dismiss for failure to state a claim" standard (Dkt. 8–3 at 4–5). Additionally, when using the Court's electronic docketing system, defense counsel designated his motion as a motion for summary judgment only. (Dkt. 8). "The Court urges that in the future, Defendants' counsel determine the basis for his motion, and draft the supporting papers to accurately and consistently reflect the same." *Parra*, 2013 WL 6669235, at *4, 2013 U.S. Dist. LEXIS 177784, at *15.

Defendants have submitted materials outside of the scope of Plaintiff's complaint in support of their motion. (Dkt. 8–4 and 8–5). While such materials may not be considered on a motion to dismiss, they may be considered on a motion for summary judgment. *See* Fed.R.Civ.P. 12(d) and Fed.R.Civ.P. 56.

Plaintiff argues that the Court should deny Defendants' motion in order to permit Plaintiff to engage in discovery. (Dkt. 11 at ¶ 4). Plaintiff states that specific materials relevant to his case, including the record of the disciplinary hearing, are in the possession of Defendants. (*Id.* at ¶ 5). He also indicates his desire to obtain affidavits, and serve interrogatories and notices to admit on Defendants. (*Id.* at ¶¶ 4, 8). Plaintiff argues that he will be able to establish a violation of his due process rights at the disciplinary hearing if he is permitted to conduct discovery on his claims. (*Id.* at ¶ 9). Defendants argue that the Court should deny Plaintiff's request because it is "vague and conclusory," and that Plaintiff fails to show how discovery would create a factual or legal difference to the outcome. (Dkt. 12 at 2).

■ "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000). Pursuant to Fed.R.Civ.P. 56(d), to avoid summary judgment on the basis that facts are unavailable to the non-movant, the non-movant must submit a declaration stating that, for specified reasons, it cannot present facts essential to justify its opposition. Plaintiff has submitted such an affidavit. (*See* Dkt. 11).

Granting summary judgment against Plaintiff is inappropriate at this stage of the litigation because he has not had any opportunity to conduct discovery to sub-

stantiate his claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the purpose of summary judgment is to allow for disposition of a case "after adequate time for discovery" has elapsed); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir.2003) (stating that summary judgment should only be granted after discovery); *Snyder v. Fantasy Interactive, Inc.,* No. 11 Civ. 3593(WHP), 2012 WL 569185, at *1–2, 2012 U.S. Dist. LEXIS 23087, at *3–4 (S.D.N.Y. Feb. 9, 2012) (declining to convert motion to dismiss into one for summary judgment because plaintiffs had yet to conduct discovery); *Baptiste v. Warden at Ottisville, FCI New York,* No. 09 Civ. 5523(AKH), 2010 WL 3185748, at *3, 2010 U.S. Dist. LEXIS 81291, at *9 (S.D.N.Y. Aug. 11, 2010) (declining to convert motion to one for summary judgment in light of plaintiff's *pro se* status and lack of any discovery).

■ Defendants argue they have submitted as exhibits to their motion materials that are relevant to Plaintiff's claims. (*See* Dkt. 12 at 3). However, these materials were selected by Defendants, and Plaintiff also argues that affording him the opportunity to submit interrogatories and notices to admit will help him substantiate his claims. (*See* Dkt. 11). Defendants cite *Wik v. Swapceinski,* No. 11–CV–6220 CJS, 2012 WL 694754, 2012 U.S. Dist. LEXIS 27218 (W.D.N.Y. Mar. 1, 2012) and *Livingston v. Kelly,* 707 F.Supp.2d 430 (W.D.N.Y. 2010), where the plaintiffs were denied further discovery because their requests to conduct additional discovery were insufficient. (Dkt. 12 at 3). However, in both *Wik* and *Livingston,* the motions for summary judgment were made at the postanswer stage, after Plaintiff was afforded at least *some* opportunity to engage in meaningful discovery. Here, Plaintiff has not had *any* opportunity to engage in discovery. A more procedurally-analogous case is *Kelly v. Tan,* No. 11–CV–06614–

CJS, 2013 WL 4811913, at *3, 2013 U.S. Dist. LEXIS 129116, at *9 (W.D.N.Y. Sept. 10, 2013). In *Kelly,* the defendants' motion for summary judgment was filed at the pre-answer stage and before any discovery had taken place. The Honorable Charles J. Siragusa, United States District Judge, denied the motion, noting that "[a]lthough Plaintiff has not raised the issue, the Court is mindful that no discovery has yet taken place in this action ... the Court could deny the motion on this basis alone...." *Id.* at *4, 2013 U.S. Dist. LEXIS 129116 at *10–11.

Defendants' motion for summary judgment is denied without prejudice. Defendants may renew their motion for summary judgment after Plaintiff has had an opportunity to engage in discovery. The Court evaluates Plaintiff's complaint under the standard for a motion to dismiss, and declines to consider any materials outside the scope of Plaintiff's complaint.

## II. Defendants' Motion to Dismiss

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiffs favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

 In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'") (alteration in original) (internal citation omitted). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984).

## A. Plaintiff's Failure to Supervise Claim

Plaintiff claims that Defendants Prack and Esgrow were "grossly negligent in supervising their subordinates." (Dkt. 1 at ¶ 79(*o*)). Similarly, Plaintiff alleges that Defendant Prack is liable for failing to recognize that the hearing violated his due process rights. (*Id.* at ¶ 79(m)). Defendants argue that these claims must be dismissed because Plaintiff has not offered facts in support of his allegation and has failed to meet the Rule 12(b)(6) pleading standards. (Dkt. 8–3 at 24–25).

 It is well-settled that a supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). "A 'plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone,* 295 F.Supp.2d 268, 276 (W.D.N.Y.2003) (quoting *Burgess v. Morse,* 259 F.Supp.2d 240, 248 (W.D.N.Y. 2003)) (alteration in original). Personal involvement by a supervisory official may be established by evidence of the official's direct participation in the alleged constitutional deprivation, or by evidence of the following by the supervisory official:

(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

*Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003) (citing *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d

246, 254 (2d Cir.2001) and *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).[4] "In other words, the conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." *Roberites v. Huff*, No. 11–CV–521SC, 2012 WL 1113479, at *6, 2012 U.S. Dist. LEXIS 46206, at *21 (W.D.N.Y. Mar. 30, 2012).

■ To support a finding of personal involvement based on a failure to supervise, Plaintiff must show that the supervisory Defendants "knew or should have known that there was a high degree of risk that [their subordinates] would behave inappropriately ..., but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [Plaintiff]." *Frederick v. Sheahan*, No. 6:10–CV–6527(MAT), 2014 WL 3748587, at *8, 2014 U.S. Dist. LEXIS 104246, at *23 (W.D.N.Y. July 29, 2014) (citing *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir.2002)).

■ Plaintiff has failed to state a claim for supervisory liability. Plaintiff offers no facts supporting his allegation that defendants Prack and Esgrow were negligent in supervising their subordinates, other than the conclusory statement that "Prack and Esgrow [were] grossly negligent in supervising their subordinates." (Dkt. 1 at ¶ 79(*o*)). Plaintiff's claim that Prack and Esgrow failed to supervise their subordinates, without explaining how they failed to supervise their subordinates, or which

subordinates they failed to supervise, does not satisfy even the most minimal pleading standards.

Similarly, Plaintiff's allegation that defendant Prack failed to recognize that the hearing violated Plaintiff's due process rights after he was informed of the alleged constitutional violations is conclusory. (*Id.* at (m)). Plaintiff does not offer any facts in support of this allegation, including how and when defendant Prack was informed of the alleged constitutional violation, or the wrongful actions allegedly taken by him.

As explained by the Supreme Court in *Twombly*, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations and citations omitted); *see also Parris v. N.Y.S. Dep't of Corr. Servs.*, 947 F.Supp.2d 354, 364 (S.D.N.Y. 2013) ("Conclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983."); *Rosario v. Fischer*, No. 11 Civ. 4617(JPO)(FM), 2012 WL 4044901, at *3, 2012 U.S. Dist. LEXIS 133502, at *9 (S.D.N.Y. Aug. 28, 2012), *adopted*, No. 11 Civ. 4617(JPO), 2012 WL 6681695, 2012 U.S. Dist. LEXIS 182325 (S.D.N.Y. Dec. 19, 2012) (conclusory allegations of creating or fostering an unconstitutional practice are insufficient to establish personal involvement). Accordingly, Plaintiff's claims against defendant Prack and his

**4.** The Court is cognizant that "[t]here has been considerable division among the district courts of the Second Circuit as to whether [*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ] abrogates several factors of the Colon test and if so to what extent." *James v. Orange Cnty. Corr. Facility*,

No. 09 Civ. 7226(CM), 2011 WL 5834855, at *4, 2011 U.S. Dist. LEXIS 134560, at *11 (S.D.N.Y. Nov. 18, 2011). Here, Plaintiff has failed to present evidence satisfying any of the *Colon* factors; therefore, any disagreement among district courts in the Second Circuit is irrelevant to the Court's analysis.

supervisory liability claim against defendant Esgrow are dismissed.

## B. Plaintiff's Due Process Claims

Plaintiff claims that Defendants violated his procedural due process rights in connection with his disciplinary rehearing in 2010. (Dkt. 1). Defendants argue that Plaintiff's claims against them should be dismissed because Plaintiff has failed to allege a constitutional violation. (Dkt. 8–3 at 7–10).

Section 1983 requires a plaintiff to "show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law." *Reed v. Medford Fire Dep't, Inc.*, 806 F.Supp.2d 594, 609 (E.D.N.Y.2011) (citing *Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir.2004)). The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Although prisoners retain some rights under the due process clause, "those rights are somewhat muted by institutional concerns inherent in a correctional system." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir.1992).

In raising a due process claim, a plaintiff must first establish that the challenged action infringed a constitutionally protected property or liberty interest. A prison disciplinary hearing implicates a protected property interest if it "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir.2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Plaintiff has alleged that he was deprived of a protected property interest because he was sentenced to 20 months in SHU, loss of privileges, and 20 months loss of recommended good time. (Dkt. 1 at ¶ 75). This penalty satisfies the protected property interest standard. *See Sims v. Artuz*, 230 F.3d 14, 24 (2d Cir.2000) (vacating dismissal of procedural due process claims, since during little more than a four and one-half month period, plaintiff was sentenced to SHU confinement for a total of nearly three and one-half years); *Hidalgo v. Hopin*, No. 01–CV–0057(Sr), 2009 WL 4803689, at *8–9, 2009 U.S. Dist. LEXIS 114875, at *23–24 (W.D.N.Y. Dec. 9, 2009) (one year in SHU, one year loss of commissary, packages, and phone, and one year loss of good time were sufficient to demonstrate a protected liberty interest).

Second, a plaintiff must allege that he was deprived of the protected property interest without due process. *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.1998). It is well-established that inmates have the right not to be deprived of a liberty interest without due process, and that inmates have due process rights in prison disciplinary hearings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir.2004). However, "[p]rison inmates charged with disciplinary violations do not have 'the full panoply of rights' afforded to a defendant in a criminal prosecution." *Galan v. Laird*, No. 08–cv–267 (NG), 2010 WL 3780175, *1, 2010 U.S. Dist. LEXIS 98864, *4 (E.D.N.Y. Sept. 21, 2010) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). To comply with procedural due process, prison authorities must provide an inmate charged with a violation in a disciplinary hearing with: " 'advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon

and the reasons for the disciplinary actions taken.'" *Id.* (quoting *Sira*, 380 F.3d at 69). The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

### 1. Plaintiff's Claims Regarding His Inmate Assistant

Plaintiff alleges that he was not provided with adequate inmate assistance in connection with his 2010 disciplinary rehearing. (Dkt. 1 at ¶¶ 21–29). Defendants argue that Plaintiff's claims must be dismissed because defendant Piecuch met with Plaintiff and made a meaningful effort to locate documents and witnesses for Plaintiff. (Dkt. 8–3 at 10).

 Although inmates are not entitled to retained or appointed counsel in prison disciplinary hearings, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir.1988). New York's regulations entitle a prisoner to an employee assistant to help him prepare for a disciplinary hearing. *See* 7 N.Y.C.R.R. §§ 251–4.1, 251–4.2. The assistant "need only perform what the plaintiff would have done but need not go beyond the inmate's instructions." *Lewis v. Murphy*, No. 12–CV–268 (NAM/CFH), 2014 U.S. Dist. LEXIS 102659, at *35 (N.D.N.Y. June 27, 2014), *adopted*, No. 9:12–CV–00268 (NAM/CFH), 2014 U.S. Dist. LEXIS 101351 (N.D.N.Y. July 25, 2014). The inmate assistant's role is to interview witnesses and report the results of his efforts to the inmate, and to assist the inmate in obtaining documentary evidence or written statements which may be necessary. *See* 7 N.Y.C.R.R. § 251–4.1. "On one extreme, an assigned assistant who does nothing to assist an inmate 'has failed to accord the prisoner his limited constitutional due process right of assistance.'" *Gates v. Selsky*, No. 02CV496 (CONSENT), 2005 WL 2136914, at *6, 2005 U.S. Dist. LEXIS 37787, at *19 (W.D.N.Y. Sept. 2, 2005) (citing *Eng*, 858 F.2d at 898). However, "[c]ourts have found assistance to be adequate when a replacement assistant interviewed witnesses but failed to tell the inmate ... or when the inmate alleged lack of assistance in finding documents, courts found that the documents did not exist...." *Id.* at *6, 2005 U.S. Dist. LEXIS 37787 at *19; *see also Pacheco v. Vanwyk*, No. 94–CV–456 (RSP/GJD), 1997 WL 642540, at *2, 1997 U.S. Dist. LEXIS 16155, at *5 (N.D.N.Y. Oct. 15, 1997) (finding as a matter of law that the employee assistant's help was constitutionally sufficient, because "Defendant Vanwyck provided available evidence that Pacheco requested and should not have been expected to check every inmate on the transfer bus....").

 Plaintiff alleges that he met with and was interviewed by his inmate assistant (Dkt. 1 at ¶ 21); that he gave the assistant a list of materials he wanted in preparation for his hearing (*id.*); and that the assistant gave him some materials, including a UI and UF report and log book entries (*id.* at ¶ 22). However, Plaintiff also alleges that he asked for, but was not provided with, other materials, including: a list of inmates in E7 block, list of porters, photographs, interviews of nurses and witnesses, and command logs. (*Id.* at ¶ 30). Plaintiff also alleges that the inmate assistant did not give Plaintiff the answers to the questions he proposed for potential witnesses; failed to provide Plaintiff with witness refusal forms; and failed to complete the inmate assistant form. (*Id.* at ¶¶ 26–29). Plaintiff alleges that due to defendant Piecuch's failure to provide him with these materials, he was

deprived of the opportunity to marshal evidence in time for his hearing. (*Id.* at ¶ 26).

■ Taking Plaintiff's allegations as true, as the Court must on a motion to dismiss, Plaintiff has stated a due process violation relating to defendant Piecuch's failure to provide him with proper assistance in preparing for his disciplinary hearing. Plaintiff has identified specific documents that he requested defendant Piecuch deliver to him but that he never received. Plaintiff also states that defendant Piecuch "took the list of questions as well as all other request[s][he] made and never came back" (*id.* at ¶ 24), and that Piecuch told him at their first meeting that he would be unable to locate any of the witnesses requested by Plaintiff (*id.* at ¶ 23). "Significantly, an inmate assistant's failure to obtain testimony of witnesses requested by the inmate, or other evidence is a violation of the inmate's due process rights." *Cepeda v. Urban*, No. 12–CV–00408(F), 2014 WL 2587746, at *7, 2014 U.S. Dist. LEXIS 79097, at *22 (W.D.N.Y. June 10, 2014) (citing *Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir.1998)) (plaintiff's due process rights violated when defendant undertook to act as inmate's assistant, and then provided no assistance). Furthermore, Plaintiff alleges that Piecuch failed to provide him with any reason as to why compliance with his requests was not possible. (*Id.* at ¶¶ 27–28). *See Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir.1994) (holding that some explanation must be provided either at the time of the disciplinary hearing or subsequently in court, even if only *in camera*, establishing why requested inmates would not be testifying). Accordingly, Plaintiff has stated a claim that he was denied adequate assistance. in preparing for his disciplinary hearing.

## 2. Plaintiff's Claims Regarding His Disciplinary Hearing

Plaintiff also claims that his due process rights were violated during his disciplinary hearing, including that defendant Esgrow was biased; he was not permitted to present witnesses, documents, or other evidence at the hearing; the hearing was recommenced out of his presence; and he was denied the right to a timely hearing. (Dkt. 1 at ¶¶ 32–77). Defendants argue that Plaintiff's claims should be dismissed because defendant Esgrow provided Plaintiff with requested materials, gave Plaintiff the opportunity to present evidence and examine witnesses, and ensured that Plaintiff's due process rights were protected. (Dkt. 8–3 at 14–17). Defendants also argue that Plaintiff had a timely hearing. (*Id.* at 23–24).

### a. Hearing Officer Bias

■ Prisoners are entitled to have their disciplinary charges reviewed by an unbiased hearing officer. *Russell*, 35 F.3d at 59. However, "[c]laims of hearing officer bias are common in § 1983 claims by inmates, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify*, 968 F.Supp.2d 532, 541 (W.D.N.Y.2013). "Administrators serving as adjudicators are presumed to be unbiased." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.1996). It is well-settled that "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "the degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.* An inmate's own subjective belief that a hearing officer was biased is insufficient. *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989).

■ Plaintiff's sole allegation regarding defendant Esgrow's bias is that "FLO. was not fair and impartial." (Dkt. 1 at

¶ 79(1)). Plaintiff's claim that defendant Esgrow was biased against him is conclusory and subjective, as Plaintiff fails to allege how defendant Esgrow was biased against him, i.e., whether Esgrow prejudged his guilt, or whether Esgrow exhibited partiality against him.

■ An impartial hearing officer is "one who, *inter alia*, does not prejudge evidence and who cannot say ... how he would assess the evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569–70 (2d Cir.1990). Although Plaintiff does allege that he was denied the ability to present certain evidence at the hearing, and that the hearing was recommenced outside of his presence, "[those] fact[s], as discussed [below], [go] to [Plaintiff's] right to call witnesses and present a defense." *Gillard v. Rovelli*, No. 12–CV–83 (LEK/CFH), 2014 U.S. Dist. LEXIS 112868, at *27–28 (N.D.N.Y. Mar. 31, 2014), *adopted*, No. 9:12–CV–083 (LEK/CFH), 2014 U.S. Dist. LEXIS 112484 (N.D.N.Y. Aug. 14, 2014); *see also Cusamano v. Sobek*, 604 F.Supp.2d 416, 484–85 (N.D.N.Y.2009), *adopted in part*, 604 F.Supp.2d 416 (N.D.N.Y.2009) ("Even assuming, for the sake of argument, that Defendant Williams did commit some sort of procedural error at the hearing in question, I can find no evidence that such an error was caused by some type of bias (e.g., an impermissible conflict of interest, etc.) rather than being caused by simple error."); *Edwards v. Horn*, No. 10 Civ. 6194(RJS)(JLC), 2012 WL 760172, at *10 n. 11, 2012 U.S. Dist. LEXIS 30968, at *38–39 n. 11 (S.D.N.Y. Mar. 8, 2012) (where Plaintiff alleged that he was never called down for the hearing and that the hearing officer was biased in favor of finding him guilty, rejecting Plaintiff's claim of bias because an impartial hearing officer is one who does not prejudge the evidence, and Plaintiff failed "to plead any specific facts, beyond his conclusory allegations of bias, to suggest that [the hearing officer]

was predisposed to finding him guilty."); *Pacheco*, 1997 WL 642540, at *12, 1997 U.S. Dist. LEXIS 16155, at *25 ("Plaintiff alleges that [the hearing officer] was biased. However, there is no indication of any factual support for this assertion. As a basis for the claim, the plaintiff merely lists the adverse rulings to which he was subjected as evidence of bias. Simply because [the hearing officer] denied evidence or denied witnesses does not mean that he has prejudged the case."); *c.f., Washington*, 968 F.Supp.2d at 542 ("In the case at bar, however, plaintiff does more than simply allege that [the hearing officer] was biased. He alleges that at the end of the hearing, the [hearing officer] called plaintiff 'a little monkey,' and told plaintiff that there was 'more retaliation on the way,' and that 'they were not done yet.' "); *Rahman v. Acevedo*, No. 08 Civ. 4368(DLC), 2011 WL 6028212, at *7, 2011 U.S. Dist. LEXIS 139186, at *19–20 (S.D.N.Y. Dec. 5, 2011) ("when a hearing officer states that he will not even consider evidence that a prisoner has introduced because he cannot believe that the prisoner's theory could be true, the hearing officer may be biased.").

Plaintiff's complaint is devoid of allegations to support a claim of bias. Notably, Plaintiff does not allege that defendant Esgrow said anything negative about him during the hearing, or that he was involved in the incident that was the subject of the hearing. In short, Plaintiff's conclusory remark that defendant Esgrow was biased against him is not enough to support a claim that he was deprived of an impartial hearing officer. Accordingly, Plaintiff's claim that he was deprived of an impartial hearing officer is dismissed.

### b. Denial of Evidence

■ "The inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do

so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S at 566, 94 S.Ct. 2963. However, "prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal and undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id. See also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991) (a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence); *Phelan v. Superintendent of the Great Meadow Corr. Facility*, No. 11–cv–06127, 2012 WL 1190169, at *6, 2012 U.S. Dist. LEXIS 49776, at *18 (W.D.N.Y. Apr. 9, 2012) ("The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case."). In exercising his discretion to exclude evidence from a disciplinary hearing, a prison official must "explain, in a limited manner, the reason why witnesses were not allowed to testify...." *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

■ Here, Plaintiff alleges that defendant Esgrow failed to permit him to introduce evidence regarding inmate refusal forms, certain testimony tending to show that Plaintiff's rights were violated, the alleged videotape of the incident, and certain photographs into evidence. (Dkt. 1 at ¶¶ 54–61, 63, 66, 68–72, 74). Furthermore, Plaintiff specifically alleges that defendant Esgrow failed to demonstrate that certain evidence would have been redundant or would have constituted a threat to institutional safety, and failed to make a part of the record the effort made to secure the testimony of inmate witnesses that could not be located. (*Id.* at ¶¶ 57–58). In short, "whether the exclusion of evidence

in this case was justified ... cannot be determined on the fac[e] of the ... complaint." *Carpenter v. Dep't of Corr.*, No. 10 Civ. 8087(PAE), 2012 WL 1604878, at *3, 2012 U.S. Dist. LEXIS 64640, at *8 (S.D.N.Y. May 8, 2012). At this early stage of the litigation, considering the low standard required of a *pro se* plaintiff on a motion to dismiss, the Court finds that Plaintiff has stated a claim with regard to defendant Esgrow's failure to allow him to present witnesses and evidence at his disciplinary hearing.

### c. Recommencing the Hearing Outside of Plaintiff's Presence

■ Plaintiff claims that defendant Esgrow recommenced the disciplinary hearing outside of Plaintiff's presence and stated on the record that he provided Plaintiff with certain materials, which Plaintiff claims he never received. (Dkt. 1 at ¶¶ 76–77).

"District courts in this circuit have expressed differing views as to whether an inmate has a due process right to be present at a disciplinary proceeding separate and apart from the well-established rights of inmates to call witnesses and present documentary evidence." *Vogelfang v. Capra*, 889 F.Supp.2d 489, 513 (S.D.N.Y. 2012). In *Young v. Hoffman*, 970 F.2d 1154 (2d Cir.1992), the Second Circuit Court of Appeals stated that "the Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary proceedings, including the opportunity to appear at the hearing and to call witnesses." *Id.* at 1156; *see also Chavis v. Zodlow*, 128 Fed.Appx. 800, 805 (2d Cir.2005) (characterizing the Supreme Court's decision in *Wolff* as acknowledging an inmate's limited right to be present during his disciplinary proceeding). Furthermore, in *Webb v. Selksy*, No. 01–CV–149S, 2008 WL 796179, 2008 U.S.

Dist. LEXIS 22989 (W.D.N.Y. Mar. 24, 2008), the Court noted that "the Second Circuit [has] referred to the opportunity [for an inmate] to appear at the hearing and to call witnesses." *Id.* at *7, 2008 U.S. Dist. LEXIS 22989 at *24. "Thus, it would appear that Plaintiff may have had at least a limited right to appear at his hearing." *Id.; but see Bogle v. Murphy,* No. 98–CV–6473 CJS, 2003 WL 22384792, at *5–6, 2003 U.S. Dist. LEXIS 18521, at *18–19 (W.D.N.Y. Sept. 9, 2003) (holding that an inmate does not have a due process right to be physically present at his disciplinary hearing).

■ "In light of the fact that the defendants do not squarely argue that [the plaintiff] had no right to be at the hearing, and that the law appears to be open on this issue, the Court declines to hold, on a motion to dismiss, that [the plaintiff] has failed to state a due process claim upon which relief can be granted." *Vogelfang,* 889 F.Supp.2d at 515. Plaintiff has stated a claim for violation of his due process right to appear at his disciplinary hearing and present evidence in his defense. Plaintiff's absence from the hearing, barring any legitimate safety and penological concerns, *see Cabassa v. Smith,* Civ. Action No. 9:08–CV–480 (LEK/DEP), 2011 U.S. Dist. LEXIS 29720, at *21–22 (N.D.N.Y. Feb. 22, 2011), *adopted,* No. 9:08–CV–480 (LEK/DEP), 2011 U.S. Dist. LEXIS 29719 (N.D.N.Y. Mar. 22, 2011), or his own refusal to attend the hearing, *see Hinton v. Prack,* Civ. No. 9:12–CV–1844 (LEK/RFT), 2014 U.S. Dist. LEXIS 126955, at *37 (N.D.N.Y. Aug. 14, 2014), *adopted,* No. 9:12–CV–1844 (LEK/RFT), 2014 WL 4627120, 2014 U.S. Dist. LEXIS 126949 (N.D.N.Y. Sept. 11, 2014), would arguably deprive him of these rights. *See Vogelfang,* 889 F.Supp.2d at 512–15 (discussing cases and declining to dismiss due process claim that inmate was excluded from disciplinary hearing); *Wright v. Dee,* 54 F.Supp.2d 199, 206–07 (S.D.N.Y.1999)

(allegations that inmate was denied due process when hearing was conducted "in his absence and without giving him an opportunity to interview witnesses or discover evidence" states a claim under *Wolff*). Exclusion of an inmate from his disciplinary proceeding must "occur only in the unusual circumstance." *Malik v. Tanner,* 697 F.Supp. 1294, 1302 n. 12 (S.D.N.Y. 1988).

Plaintiff's complaint contains no allegations that an unusual circumstance justifying his exclusion existed at the disciplinary rehearing. Rather, Plaintiff alleges that defendant Esgrow recommenced the hearing after Plaintiff left and placed false testimony on the record (Dkt. 1 at ¶¶ 76–77), which denied Plaintiff the opportunity to object to the testimony (*id.* at ¶ 77). Accordingly, Plaintiff has stated a due process violation related to his exclusion from a portion of the disciplinary rehearing.

#### d. Timeliness of the Hearing

Plaintiff claims that (1) his first disciplinary hearing was reversed in an untimely fashion; and (2) he was denied a timely rehearing. (Dkt. 1 at ¶¶ 17–18, 32).

Plaintiff alleges that, pursuant to DOCCS policies, a superintendent's hearing must be reversed, modified, or affirmed within 60 days. (*Id.* at ¶ 18). Neither Plaintiff nor Defendants cite to any statute or regulation memorializing this requirement; however, the Court presumes that Plaintiff is referring to 7 N.Y.C.R.R. § 254.8, which governs appeal procedures from superintendent's hearings. 7 N.Y.C.R.R. § 254.8 states:

Any inmate shall have the right to appeal the disposition of any superintendent's hearing, to which he was a party, to the commissioner within 30 days of receipt of the disposition. The commissioner or his designee shall issue a decision within 60 days of receipt of the appeal.

Plaintiff's allegations regarding the untimely decision on the appeal of his first disciplinary hearing are unclear, but it appears that Plaintiff contends that the January 29, 2009, decision affirming but modifying the disposition of his first disciplinary hearing was untimely.

Taking the facts alleged by Plaintiff in his complaint as true, Plaintiff has adequately alleged that the decision on the appeal of his first disciplinary hearing was untimely. Plaintiff's first disciplinary hearing concluded on August 12, 2008 (Dkt. 1 at ¶ 11), and Plaintiff alleges that he filed a timely administrative appeal (*id.* at ¶ 12).[5] The decision affirming but modifying the disposition of Plaintiff's first disciplinary hearing was issued on January 29, 2009. (*Id.* at ¶ 13). Although it is not specified in the complaint, if Plaintiff filed an appeal of his first disciplinary hearing on or about September 11, 2008 (30 days after the conclusion of the first disciplinary hearing), the disposition of the first disciplinary hearing should have been affirmed, reversed, or modified on or about November 10, 2008. Accordingly, it appears from the complaint that the decision denying Plaintiff's appeal, which according to Plaintiff's complaint was made on January 29, 2009, occurred more than 60 days after he filed an appeal of the first disciplinary hearing. Accordingly, construing his allegations generously, Plaintiff has alleged that 7 N.Y.C.R.R. § 254.8 was violated.[6]

However, Plaintiff has failed to allege that the violation of 7 N.Y.C.R.R. § 254.8 caused harm or prejudice. *See Hinton v. Prack*, No. 9:12–CV–1844 (LEK/RFT) 2014 WL 4627120, at *2, 2014 U.S. Dist. LEXIS 126949, at *4 (N.D.N.Y. Sept. 11, 2014) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing."). The disposition of the first disciplinary hearing was affirmed on appeal, and it was only after Plaintiff pursued an Article 78 proceeding that he was ultimately granted a new hearing. In other words, Plaintiff has failed to allege any harm or prejudice from the untimely affirmance of the first disciplinary hearing. Furthermore, Plaintiff has not alleged that he was entirely deprived of an administrative review, but only that the review occurred beyond the 60 days required by 7 N.Y.C.R.R. § 254.8.

It is also questionable as to whether Plaintiff has a federal constitutional right to administrative review of a disciplinary hearing in the first place. *See Thomas v. Calero*, 824 F.Supp.2d 488, 504 (S.D.N.Y. 2011), *adopted*, 824 F.Supp.2d 488 (S.D.N.Y.2011) ("Insofar as defendants argue that plaintiff has no federal constitutional right to administrative review of a prison disciplinary hearing ... they are correct."); *Austin v. Fischer*, No. 09 Civ. 4812, 2010 WL 3187642, at *2, 2010 U.S. Dist. LEXIS 81361, at *5–6 (S.D.N.Y. Aug. 11, 2010), *aff'd*, 453 Fed.Appx. 80 (2d Cir. 2011) ("Plaintiff alleges that the Commis-

---

**5.** Plaintiff does not allege the exact date on which he filed his appeal; however, if Plaintiff's appeal was timely, he must have filed it 30 days from receipt of the disposition of the first disciplinary hearing.

**6.** To the extent Plaintiff alleges that he was informed that his first disciplinary hearing was reversed "19 months to[o] late," (*see* Dkt. 1 at ¶¶ 17–19), the Court is unaware of such a requirement, and neither party cites to any statute, rule, or regulation memorializing such a requirement. According to the complaint, Judge Mueller granted Plaintiff's Article 78 petition on January 8, 2010, and Plaintiff was allegedly given notice of the reversal by defendant Prack on March 4, 2010. (*Id.* at ¶¶ 15, 17). Plaintiff has not adequately alleged any constitutional violation relating to his being informed that his hearing was reversed in an untimely manner.

sioner issued a decision sixty eight days after Plaintiff's submission of his administrative appeal ... However, this eight day delay does not violate Plaintiff's due process rights, because the Fourteenth Amendment does not require *any* administrative review of disciplinary convictions.") (internal quotations and citation omitted); *Amato v. Ward,* 41 N.Y.2d 469, 473, 393 N.Y.S.2d 934, 362 N.E.2d 566 (1977) ("This type of administrative review [of prison disciplinary hearings pursuant to the N.Y.C.R.R.] is not required by the federal constitution."); *but see Omaro v. Goord,* No. 06–CV–6141–CJS, 2009 WL 2163102, at *4–5, 2009 U.S. Dist. LEXIS 61546, at *11–12 (W.D.N.Y. July 17, 2009) (declining to grant defendant summary judgment where plaintiff's appeal was decided thirteen months beyond the sixty-day limit imposed by 7 N.Y.C.R.R. § 254.8).

Considering the nature of Plaintiff's claim and the fact that he has failed to allege any harm, Plaintiff's claim relating to violation of 7 N.Y.C.R.R. § 254.8 is dismissed.[7]

With regard to Plaintiff's claim that he was denied a timely rehearing, "[w]here an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without the authorization of the commissioner or his designee." 7 N.Y.C.R.R. § 251–5.1(a). Similarly, 7 N.Y.C.R.R. § 251–5.1(b) provides that a disciplinary hearing must be completed within 14 days following the writing of the misbehavior report, unless otherwise authorized.

■ Despite these requirements, "[d]ue process for an inmate disciplinary hearing does not encompass a right to a speedy hearing. The Second Circuit has held that the lack of a speedy hearing alone 'would not be enough generally to establish a constitutional claim.'" *Barnes v. Henderson,* 628 F.Supp.2d 407, 411 (W.D.N.Y.2009) (quoting *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995)); *see also Nelson v. Plumley,* Civil Action No. 9:12–CV–0422 (TJM/DEP), 2014 U.S. Dist. LEXIS 132778, at *31–32 n. 15 (N.D.N.Y. Aug. 13, 2014), *adopted,* No. 9:12–CV–422, 2014 WL 4659327, 2014 U.S. Dist. LEXIS 129973 (N.D.N.Y. Sept. 17, 2014) (denying Plaintiff's claim that his disciplinary hearing was not timely commenced, because such a claim is based upon New York State regulations governing disciplinary proceedings, and violations of New York State law that do not deprive the plaintiff of a right secured by the Constitution are insufficient to state a claim under § 1983); *Sowell v. Weed,* No. 07–CV–6355(MAT), 2013 WL 3324049, at *17, 2013 U.S. Dist. LEXIS 92866, at *47 (W.D.N.Y. July 1, 2013) (plaintiff's claim that his hearing was not completed within the time parameters set forth in 7 N.Y.C.R.R. § 251–5.1(b) was not cognizable in § 1983 claim).

■ Furthermore, disciplinary proceedings may be commenced or continued outside of the time limits prescribed by the New York State regulations if a request for an extension is filed. *See Lewis v. Murphy,* No. 12–CV–268 (NAM/CFH), 2014 U.S. Dist. LEXIS 102659, at *39–40 (N.D.N.Y. June 27, 2014), *adopted,* No. 9:12–CV–00268 (NAM/CFH), 2014 U.S. Dist. LEXIS 101351 (N.D.N.Y. July 24, 2014) (disciplinary hearing was timely

---

7. Defendants also correctly note that any claim relating to the modification of Plaintiff's first disciplinary hearing, which allegedly occurred on January 29, 2009 (*see* Dkt. 1 at

¶ 13), would be barred by § 1983's three-year statute of limitations, since Plaintiff did not file his complaint until July 2, 2013. (*See* Dkt. 8–3 at 4).

commenced where extensions were requested); *Santana v. Olson*, No. 07–CV–00098F (consent), 2010 WL 3386840, at *4, 2010 U.S. Dist. LEXIS 88145, at *11 (W.D.N.Y. Aug. 25, 2010) (although disciplinary hearing was not completed within 14 days of the writing of the misbehavior report, requests for extensions were granted); *see also* 7 N.Y.C.R.R. § 251–5.1(b) (disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report; however, delay may be authorized by the commissioner or his designee).

■ Plaintiff was served with the disciplinary charge on March 5, 2010, and the hearing was commenced on March 10, 2010, which is before the seven days required by 7 N.Y.C.R.R. § 251–5.1(a). (Dkt. 1 at ¶¶ 20, 31). Therefore, Plaintiff has not alleged a violation of 7 N.Y.C.R.R. § 251–5.1(a).

■ With regard to his claim that his disciplinary hearing was not completed in a timely fashion pursuant to N.Y.C.R.R. § 251–5.1(b), Plaintiff alleges that extensions were obtained in order to secure evidence and locate witnesses. (*See id.* at ¶¶ 39–43, 50–52). Accordingly, even if the completion of the hearing was untimely, it would not constitute a constitutional violation. Plaintiff's claims based on the untimely nature of his disciplinary hearing are hereby dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss is granted with respect to Plaintiff's claims against defendant Prack and the supervisory liability claim against defendant Esgrow. Plaintiff's claims relating to his denial of a hearing based on his inability to present evidence and witnesses and recommencement of the hearing outside of his presence may proceed to discovery, but

any claims regarding hearing officer bias and timeliness are dismissed. Plaintiff's claims relating to the inadequate assistance he received in preparation for his disciplinary hearing may proceed to the discovery stage. Defendants' motion for summary judgment is denied without prejudice, with leave to renew the motion following discovery.

The Clerk of the Court is directed to terminate Albert Prack as a defendant in the case. The remaining defendants are directed to file their answers within 20 days of entry of this Decision and Order.

SO ORDERED.